ICCHOK SZPIRO *vs.* ALVAN R. CORKIN
(and a companion case[1]).

Middlesex.   October 8, 1959. — January 11, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Deceit.*

An action of deceit by one granted exclusive rights by a corporation to market a religious recording in Canada could not be maintained on the basis of a false representation by the defendant that the corporation could grant the plaintiff such rights where it did not appear that the plaintiff's ability to exploit the Canadian market was impaired and his prospective profits diminished by not having exclusive rights or that any damage resulted from the misrepresentation.

TWO ACTIONS OF TORT. Writs in the Superior Court dated August 9, 1956.

The actions were heard by *Dewing*, J.

*Marcus L. Sherin*, for the plaintiffs.

*Louis Karp*, (*Arthur L. Murray* with him,) for the defendant.

BY THE COURT. The subjoined opinion was prepared by Mr. Justice Ronan, and was adopted after his death as the opinion of the court.

---

[1] The companion case is Chapel Distributing Corp., Canada, Ltd. *vs.* Alvan R. Corkin.

These are the plaintiffs' exceptions to the denial of their motions for directed verdicts and to the granting of the defendant's motions for directed verdicts in the Superior Court in two actions of deceit. The actions were consolidated for trial before an auditor with two actions of contract and the auditor filed a single report in all four actions. The contract actions have been disposed of. No evidence other than the auditor's report was introduced in the Superior Court in the deceit actions.

In 1949 the Pope recorded a prayer for peace and a blessing which the Catholic University of Milan, Italy, was authorized to reproduce and circulate throughout the world in the hope that they would receive "the widest possible diffusion as a source of inspiration and prayer." The rights passed through successive assignees until The Chapel Corporation, a Massachusetts corporation hereinafter called Chapel, was assigned "the exclusive, irrevocable and noncancellable rights to process, manufacture, sell and distribute" the recordings.

By a written contract entered into at Montreal, Canada, on December 9, 1954, Chapel granted to the plaintiff Icchok Szpiro the franchise to market the recordings in Canada. Szpiro agreed to purchase 20,000 records from Chapel at a price of $1.25 per record. Szpiro also agreed to form a Canadian corporation to take over the contract. Such a corporation, Chapel Distributing Corp., Canada, Ltd., the plaintiff in the companion case and hereinafter called Chapel Canada, was subsequently formed.

The contract of December 9 contained the following provision (in part): "Chapel hereby warrants that it has the exclusive rights of ownership and copyright in the said recording." The contract also contained two provisions relating to liquidated damages. One fixed damages at $1 per record for each record returned by Szpiro to Chapel "[i]n the event that Chapel's exclusive rights in the said recording will not be upheld by the Courts of Canada." The other fixed damages at $1 per record for every record sold in Canada by any of Chapel's distributors in the United

States. The rights granted are variously referred to in the agreement as an "exclusive franchise and license" and as "exclusive rights."

Pursuant to the contract 500 records were delivered. Szpiro paid Chapel $20,000, leaving an unpaid balance of $5,000 on the contract price for the 20,000 records. Chapel refused to authorize further deliveries until the entire $25,000 had been tendered. Chapel and Chapel Canada brought cross actions against each other in contract. Both actions were based upon the agreement of December 9, 1954. There was a finding for the defendant in the action brought by Chapel against Chapel Canada, and a finding for Chapel Canada in its action against Chapel in the amount of $22,281.25 which, it appears from the auditor's report, represented the balance of $20,000 after deducting the cost of 500 records (or $625) and interest (of $2,906.25).

The deceit alleged is that Corkin misrepresented that Chapel had "the exclusive rights of ownership and copyright" in the recording. The auditor found that "there was no representation made by . . . Corkin to the effect that . . . Chapel . . . had a copyright." We do not regard this finding as dispositive, for it is clear from the agreement that Corkin did represent, in substance, that Chapel had rights sufficient to enable Szpiro (or Chapel Canada) to exploit the Canadian market for the records without competition, whether those rights were designated "copyright" or "exclusive rights," "ownership," or "exclusive franchise and license." The crux of Corkin's representations was that Chapel could guarantee the plaintiffs exclusive rights in Canada when in fact it could not.

The plaintiffs are not helped by an assumption that their rights are unimpaired by the recovery in contract for it does not appear what if any damage resulted from the misrepresentation. *Dubois* v. *Atlantic Corp.* 322 Mass. 512, 520–521. Even if we assume that an exclusive Canadian franchise had a monetary value apart from profits the plaintiffs might have made on the records which were the subject matter of the franchise agreement, the plaintiffs have not

shown that their ability to exploit the Canadian market was impaired because their rights were not exclusive. They have assumed in their argument that their damages were at least $20,000 (20,000 records at $1 per record). Even if we assume, as their argument seems to assume, that the value of the franchise was equal to the profits they could have earned from resale of the recordings, and that their profits would have been $1 per record — a figure apparently derived from the liquidated damages provisions — there has been no showing that their profits would have been diminished by not having exclusive rights.

*Exceptions overruled.*