RICHARD P. BROWN & another[1] *vs.* BARRY H. GERSTEIN
& another.[2].

Essex.  December 14, 1983. — March 5, 1984.

Present: BROWN, GREANEY, & WARNER, JJ.

*Fraud. Practice, Civil,* Consumer protection case, Admission. *Attorney at Law,* Malpractice, Deceit, Canons of ethics. *Consumer Protection Act,* Availability of remedy, Trade or commerce. *Mortgage,* Foreclosure. *Partnership,* What constitutes. *Estoppel.*

Plaintiffs seeking damages from their former attorney for negligently failing to bring an action to enjoin a foreclosure proceeding against them presented no evidence tending to show that the foreclosure would not have occurred if the action had been brought, and, thus, that the attorney's negligence caused them injury. [565]

Plaintiffs seeking to recover damages for the negligence of the attorney they had engaged to bring suit against a bank to enjoin mortgage foreclosure proceedings on a parcel of commercial real estate owned by them could not prevail on the theory that the attorney was negligent in failing to advise them on other actions they might take to avoid foreclosure on the mortgage, in the absence of expert testimony that an attorney whose employment was thus limited would undertake to give advice on this subject. [565-566]

Evidence in an action by clients against their former attorney, whom they had retained to bring an action to enjoin mortgage foreclosure proceedings against them, would have warranted the jury in finding that the attorney knowingly made false representations of material fact to the effect that the foreclosure sale would not take place, that the plaintiffs expressly relied on these representations, and that, had they been told the truth, they would have sought to avoid a forced sale by pursuing other alternatives. [566-567]

Evidence in an action by clients against their former attorney would have warranted the jury in finding that the plaintiffs had sufficient funds to discharge a mortgage on real property owned by them but that, as a result of the attorney's deceit, they were prevented from doing so. [567-568]

[1] His wife, Ann E. Brown.

[2] Robert E. Weiner.

In the circumstances of an action by former clients alleging deceit by their attorney, the practice of law constituted "trade or commerce" for purposes of the attorney's liability under G. L. c. 93A, the Consumer Protection Act. [569-570]

Lessors of commercial property, who retained an attorney to commence an action to enjoin the foreclosure of a mortgage on the property, were acting in a business context, and thus engaging in "trade or commerce" within the meaning of G. L. c. 93A, § 11. [570-571]

In a civil action by a former client against an attorney, derivative liability of a second attorney on the basis of partnership by estoppel was not established either by the fact that the client had, some years earlier, paid for legal services in an apparently unrelated matter by means of a check payable to both attorneys, or by the second attorney's knowledge that both attorneys' names appeared together on the office stationery. [571-572]

CIVIL ACTION commenced in the Superior Court on September 19, 1977.

The case was tried before *O'Leary*, J., a District Court judge sitting under statutory authority.

*John D. Dwyer* for the plaintiffs.

*Erik Lund* for the defendants.

GREANEY, J.  The plaintiffs' amended complaint sought to recover damages from the defendants, both lawyers, on allegations (1) that Gerstein had committed malpractice in representing them in connection with a suit to restrain a mortgage foreclosure; (2) that his conduct also violated G. L. c. 93A; and (3) that Weiner, who practiced law with Gerstein, was derivatively liable for Gerstein's actions as his "partner by estoppel."  The common law claims were tried to a jury; the c. 93A claim to the judge.  See *Nei* v. *Burley*, 388 Mass. 307, 311-315 (1983).  At the conclusion of the plaintiffs' case the judge allowed a motion filed by the defendants on the c. 93A claim captioned "Motion for Directed Verdict."[3]  The jury returned a verdict in the

---

[3] The motion, despite its label, was a motion filed under Mass.R.Civ.P. 41(b)(2), 365 Mass. 804 (1974).  The judge's allowance of the motion appears to have been based on a ruling that the attorney-client relationship between the plaintiffs and Gerstein was not, as matter of law, within the scope of G. L. c. 93A.  This aspect of the case is discussed in part 3 of this opinion.

amount of $15,000 for the plaintiffs, which the judge set aside on the defendants' motion for judgment notwithstanding the verdict. Mass.R.Civ.P. 50(b), 365 Mass. 814-815 (1974). The plaintiffs have appealed from the judgment entered for the defendants. We reverse the judgment for Gerstein and order a new trial as hereinafter set out. We affirm the judgment for Weiner.

In deciding whether the judge acted properly in entering judgment notwithstanding the verdict on the common law claims, we apply the standard applicable to a motion for directed verdict. *D'Annolfo* v. *Stoneham Housing Authy.*, 375 Mass. 650, 657 (1978). *Moran Travel Bureau, Inc.* v. *Clair*, 12 Mass. App. Ct. 864 (1981). This test focuses on whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972), quoting from *Kelly* v. *Railway Exp. Agency, Inc.*, 315 Mass. 301, 302 (1943). *Miles* v. *Edward O. Tabor, M.D., Inc.*, 387 Mass. 783, 785-786 (1982).

Viewing the evidence in this light, we conclude that the jury could have found the following.[4] In 1975, the plaintiffs owned a parcel of commercial property in Wenham which they had purchased in 1967. The parcel contained a building, a major part of which was leased to Richdale Dairy Stores, Inc., for the operation of a convenience store, and the balance of which was rented to a second store under a tenancy at will. In the summer of 1974, the mortgagee on the property, Danvers Savings Bank (bank), claimed a default in the mortgage, an assertion which the plaintiffs contested. They consulted Gerstein, and, at Gerstein's request wrote a letter detailing to him their dispute with the bank.[5] In January, 1975, the plaintiffs formally retained

---

[4] We recount here the facts that the jury could have found against Gerstein, leaving until later the evidence pertinent to the claims against Weiner.

[5] These difficulties stemmed principally from a disagreement with Richdale over the parties' respective obligations under the lease. Richdale had

Gerstein "to bring suit against the . . . bank for breach of contract" based on the bank's alleged mishandling of their loan.[6] Gerstein advised the plaintiffs "not to have anything to do with the [bank because] . . . he would handle everything."

By letter dated April 18, 1975, the bank notified the plaintiffs that its board of investment had voted to commence foreclosure, that future payments on the loan would not be accepted, and that the plaintiffs would be liable for any deficiency resulting after foreclosure. Gerstein assured the plaintiffs "not to worry about [the notice] . . . [t]hat he would take care of everything [a]nd that he was drawing up papers to file against the bank."

Shortly after June 13, 1975, the plaintiffs received from the bank's attorneys a copy of the order of notice issued by the Superior Court on the bank's complaint to foreclose the mortgage. Gerstein also received a copy of this notice and again assured the plaintiffs "not to worry . . . that it [the foreclosure] wouldn't happen [because] he would take care of everything."

On July 30, 1975, the plaintiffs received written notice advising them that a foreclosure sale would be held on or after September 3, 1975, and that they would be liable for any resulting deficiency. The Browns promptly brought this notice to Gerstein's attention. Gerstein advised them that an amended complaint was being prepared,[7] and made no mention of any problems.

paid a one-third share of the fuel bills owed by the Browns and deducted that amount from rent due under the lease. Richdale also made extensive repairs to the leased property and deducted the cost of the repairs from the rent, claiming that the plaintiffs had wrongfully refused, after notice, to make the repairs. The rent had been assigned to the bank as collateral security for the mortgage. The plaintiffs claimed that Richdale's diversion of the rent caused the default in the mortgage payments.

[6] At this time, the plaintiffs paid Gerstein a retainer by check and agreed with him that they would be billed periodically at a stipulated hourly rate for his services.

[7] On July 14, 1975, the plaintiffs had received a copy of an original complaint prepared by Gerstein. After reviewing this complaint, the plaintiffs suggested some minor corrections and returned it to Gerstein for redrafting.

On August 1, 1975, the plaintiffs signed and swore to an amended complaint. This complaint alleged that the bank was solely responsible for the mortgage default, and that it had improperly refused to allow the plaintiffs to cure the default. The complaint sought preliminary injunctive relief to enjoin the foreclosure as well as an accounting and damages. Gerstein told the plaintiffs that he would file the complaint in the Superior Court. Shortly thereafter he advised the plaintiffs that he had in fact filed the complaint and that "there would be no foreclosure." The plaintiffs relied on these assurances. Gerstein never filed the complaint. He did not tell the plaintiffs that it had not been filed or that neither a temporary restraining order nor an injunction would be applied for.

On August 15, 1975, the plaintiffs received a copy of the bank's legal advertisement of the foreclosure sale which had been published in a local newspaper. This notice set the foreclosure sale at 2:00 P.M. on September 3, 1975. The notice was immediately brought to Gerstein's attention. Gerstein advised the Browns that "everything was being held in abeyance" and "that there would be no foreclosure." On August 28, 1975, Richard Brown met Gerstein. He again told Brown that "there wasn't going to be any auction sale and that he (Gerstein) might . . . have a customer for the property." These representations were false.[8] The

---

[8] On September 2, 1975, Gerstein telephoned the bank's attorney, who had previously stated to Gerstein that the bank did not prefer to foreclose and that it would not have to do so if the plaintiffs were able to sell the property and pay off the mortgage. Gerstein represented to the bank's counsel that a purchase and sale agreement had been executed to sell the property for $85,000, that he was holding a $5,000 deposit, and that a separate side agreement had been executed by the plaintiffs and the purchaser for the sale of the fixtures. The bank's attorney told Gerstein to deliver a copy of the purchase and sale agreement to him and indicated that he would consider postponing the next day's foreclosure sale if everything appeared in order. On the morning of September 3, 1975, Gerstein delivered an unsigned purchase and sale agreement to this lawyer's office and a hand-written note stating, "I am holding the $5,000 deposit." On investigation, counsel for the bank learned that no purchase and sale agreement had been signed and that Gerstein's representations were false. The foreclosure sale went forward as scheduled.

property was sold to a third party at foreclosure auction on September 3, 1975, for $62,000 without the plaintiffs' knowledge.

When the plaintiffs discovered that the property had been sold they confronted Gerstein, who then told them that he had had a "deal" with the bank's attorney, see note 8, *supra*, and that this lawyer had "double-crossed him." Gerstein recommended that the plaintiffs file an immediate suit against the bank and its counsel and assured the Browns that he would appear as a witness on their behalf at the trial. To this end, Gerstein directed the plaintiffs to another lawyer in his office. This lawyer prepared yet another complaint against the bank. This complaint, seeking damages, accused the bank of bad faith and repeated the substance of the amended complaint with one difference; it contained an assertion that at the time of the foreclosure sale "the plaintiffs were . . . financially unable to purchase the property."[9] The plaintiffs reviewed the complaint and swore to its contents. The attorney, however, declined to represent the plaintiffs after receiving information from the bank's counsel which made it doubtful that the plaintiffs could prevail at trial. As a result, the complaint was never filed and the lawyer terminated his relationship with the plaintiffs after telling them that he had returned their file to Gerstein.

There was testimony that Gerstein never advised the plaintiffs of options to prevent foreclosure.[10] The judge excluded testimony, preserved by a proper offer of proof, that had the Browns known that Gerstein had not filed the com-

---

[9] The amended complaint prepared by Gerstein did not contain an express allegation that the plaintiffs had the money to pay the mortgage but did aver that "[w]hen the [p]laintiffs finally ascertained the status of their account and the amount of the deficiency, it became too late for them to pay the amount due."

[10] More specifically, Brown testified that Gerstein did not advise the plaintiffs that they could: (a) refinance the debt with another bank, (b) discharge the mortgage by payment of the balance due on the note, (c) reinstate the mortgage by payment of the arrearages, or (d) apply for an injunction on a theory of law other than one of those stated in the amended complaint.

plaint and that the foreclosure sale would take place, they would have sought to avoid the sale by: (1) engaging another attorney to file suit and seek an injunction on a different theory of law,[11] (2) curing the default by paying the arrearage,[12] (3) attempting to sell the property or to refinance the debt with another lender, (4) attending the foreclosure sale with the required deposit either to purchase the property or to bid it up to full market value, or (5) discharging the mortgage by paying the entire indebtedness. There was further testimony that the plaintiffs had funds, independent of borrowing, which could have been used for these purposes. These funds were contained in two trusts for the benefit of Ann Brown. The first was a personal trust containing about $30,000, the terms of which permitted payments of principal to Ann Brown in the sole discretion of the trustees. The second was a testamentary trust, containing about $70,000. Ann Brown could obtain principal from the latter trust "as she deem[ed] advisable." The annual income from the testamentary trust averaged $4,000. In addition to the assets of the trusts, there was testimony that the plaintiffs had substantial equity in their home.

A few other facts are relevant to the discussion of the common law claims. The measure of damages was stipulated to be the difference between the $62,000 paid by the

---

[11] The alternate theory of law relied upon by the plaintiffs concerns the application of G. L. c. 244, § 22. They maintain that this statute permitted them to obtain an injunction stopping the foreclosure as matter of right. They contend that Gerstein was negligent in not bringing this statute to their attention or using it to enjoin the sale. They also claim that if they had discharged Gerstein and retained another lawyer, their new counsel would have invoked the statute to obtain an injunction. The judge refused to take judicial notice of the statute or to advise the jury of its provisions.

[12] There was evidence that the arrearages as of April 18, 1975, totaled $1,636.85, and on the date of the sale (September 3, 1975), totaled $5,127.35. The principal due on the mortgage on September 3, 1975, was approximately $58,000. Over the plaintiffs' objection, the judge excluded deposition testimony of the deceased chief mortgage officer of the bank that the bank would have accepted payment of the arrearages and reinstated the mortgage.

buyer at the foreclosure sale and the fair market value of the premises. There was evidence which would have warranted a finding that, on September 3, 1975, the premises had a fair market value of at least $100,000. The judge considered the common law malpractice claims as solely limited to Gerstein's negligence in failing to file the amended complaint. On this hypothesis, the judge instructed the jury that the plaintiffs could recover *only* if they found that an injunction could have been obtained on the facts alleged in the amended complaint, declining to put to the jury the question whether Gerstein was liable for deceit.

1. We first consider the common law claims of malpractice. It is conceded that an attorney-client relationship existed between Gerstein and the Browns and that Gerstein was negligent in failing to file the amended complaint. We are satsified that the judge properly rejected the plaintiffs' claim that the foreclosure would have been enjoined for the reasons stated in his memorandum on the motion for judgment n.o.v. In that memorandum, the judge pointed out that the plaintiffs had to establish that they "would have succeeded in the underlying litigation but for the attorney's negligence in not bringing suit." See *McLellan* v. *Fuller*, 226 Mass. 374, 378 (1917); *Glidden* v. *Terranova*, 12 Mass. App. Ct. 597, 600 (1981). He correctly concluded that the plaintiffs had not presented any evidence from which the jury could find that the various assertions of wrongdoing on the part of the bank were true and that the plaintiffs would have succeeded in enjoining the foreclosure sale. As a consequence, there was no evidence which would warrant a finding that Gerstein's failure to file the amended complaint proximately caused the plaintiffs any damage.

The plaintiffs argue, however, that Gerstein was negligent because he failed to advise them of alternatives to avoid foreclosure (and in the case of the remedy allegedly provided by G. L. c. 244, § 22, because he failed to find and plead that statute), and that Gerstein was liable for deceit. Because of this conduct, the Browns claim they were unable to take action which would have saved their property. The

defendants argue, on the other hand, that the judge proper-
ly kept these theories from the jury because (1) Gerstein was
hired only to prepare, file and try the amended complaint
and not to give general advice on other avenues that might
prevent foreclosure, (2) in any event, expert testimony was
necessary to establish that a lawyer in Gerstein's position
would have given advice about such alternatives, (3) deceit
was never pleaded and tried, and (4) there was insufficient
proof that if any of the alternatives had been pursued, the
foreclosure could have been avoided.

We think the plaintiffs cannot prevail on their theory that
Gerstein was negligent in failing to advise them of the op-
tions to avoid foreclosure, see note 10, *supra.* The only
evidence concerning the scope of Gerstein's employment
confined his representation to "bring[ing] suit against the
. . . bank for breach of contract." Whether a lawyer whose
employment was so limited would undertake to give his
client general advice about ways to avoid foreclosure was a
subject requiring expert testimony in accordance with the
rule that "expert testimony is generally necessary to estab-
lish the standard of care owed by an attorney in the partic-
ular circumstances and the defendant's alleged departure
from it." *Glidden* v. *Terranova,* 12 Mass. App. Ct. at 598.
We also think the plaintiffs could not recover on the theory
that Gerstein failed to discover or plead G. L. c. 244, § 22.
That statute is beyond the understanding of lay people and
expert testimony was necessary to establish that a lawyer in
Gerstein's position should have discovered the statute and,
if he had, that it could have been used to obtain an injunc-
tion.[13] What has been said so far eliminates the various
negligence theories from the case.

This does not end the matter, however, because we must
consider whether the evidence was sufficient to hold Ger-

---

[13] Objections to questions by the plaintiffs' counsel which were aimed at
eliciting such opinions from the lawyer for the bank were properly sus-
tained (if for no other reason) for lack of qualification of this lawyer as an
expert and because the questioning on the subject exceeded the limit of
permissible redirect examination.

stein liable for deceit.[14] "Fraud or deceit ·. . . is no more a necessary incident to the rendition of legal services than dishonesty is to any other profession. The avoidance of fraudulent conduct requires no special skill or knowledge, but only basic precepts of honesty and integrity. When committed by an attorney, the tort of fraud or deceit is determined by essentially the same rules that apply to any defendant, regardless of whether he is a professional." Mallen & Levit, Legal Malpractice § 107 (2d ed. 1981). See S.J.C. Rule 3:07, DR 1-102(A)(4), as appearing in 382 Mass. 769, 770 (1981) ("A lawyer shall not . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation"). Here the jury could have permissibly found that Gerstein had knowingly made false representations of material fact to the effect that the foreclosure sale would not take place, that the Browns had expressly relied on these representations, and that had the Browns been told the truth, they would have sought to avoid a forced sale by pursuing other alternatives.

2. We then come to the question whether any damage resulted from the deceit. See *Szpiro* v. *Corkin*, 340 Mass. 260, 262 (1960); Mallen & Levit, Legal Malpractice § 107, at 185 (2d ed. 1981). We have already concluded that the plaintiffs cannot prevail on the theory that they were denied recourse to G. L. c. 244, § 22. We also conclude that causation was not established with respect to payment of the arrearages,[15]

---

[14] There is no merit to the defendant's contention that the plaintiffs never pleaded or tried a deceit claim. Paragraph 12 of the amended complaint bespeaks this claim, and the record leaves no doubt that the plaintiffs' evidence raised the theory. Moreover, the plaintiffs requested jury instructions on deceit. It was the judge's obligation to instruct the jury correctly on the general principles of law applicable to the pleadings and evidence in the case. The parties' skirmishing over whether "fraud" was involved is beside the point. In the context of this case, the concepts of fraud and deceit are interchangeable. See *Nei* v. *Burley*, 388 Mass. 307, 310 (1983).

[15] There was no evidence that the bank's board of investment would have allowed the Browns to cure the default and continue payments in the future. The testimony of the bank's chief mortgage officer, see note 12, *supra*, that the bank would have accepted payment of the arrearages was

sale, or remortgage of the property,[16] and the possible pur-
chase of the property by bidding at the foreclosure sale.[17]
The plaintiffs' proof, however, was sufficient to warrant a
jury in concluding that they could have paid off the entire
mortgage had they known that the sale was going to occur.
On this issue, the jury could have found that the plaintiffs
had funds available to Ann Brown in a testamentary trust
which she could have withdrawn without restriction.   The
jury could have also found that the amount of available money
in that trust was sufficient to discharge the mortgage loan.[18]
We conclude that the plaintiffs should have been allowed to go
to the jury on the theory that Gerstein's deceit had caused
damage (the measure of which was stipulated) by preventing
them from paying off the entire mortgage indebtedness.[19]

properly excluded since there was no evidence that he was authorized,
either expressly or impliedly, to take action contrary to the decisions of the
board of investment.  See *Kanavos* v. *Hancock Bk. & Trust Co.*, 14 Mass.
App. Ct. 326, 331 (1982); *Rubel* v. *Hayden, Harding & Buchanan, Inc.*,
15 Mass. App. Ct. 252, 254-255 (1983).

[16] There was no evidence that that it was *probable* that a sale or remort-
gage could have been successfully consummated in the short period facing
the plaintiffs.  The fact that the plaintiffs had negotiated a remortgage
with the bank after they had defaulted on a previous mortgage with
another bank would not support an inference that sale or remortgage was
a likely prospect.  This is particularly so in view of the plaintiffs' debts
and other encumbrances on the property.  The plaintiffs' evidence on the
issue thus assumed the success of their goals and did not warrant the
several inferences they now urge "based on probabilities rather than pos-
sibilities." *Alholm* v. *Wareham*, 371 Mass. 621, 627 (1976).  See *Poirier*
v. *Plymouth*, 374 Mass. 206, 212 (1978).

[17] In addition to the payment of a $3,500 deposit, the foreclosure sale
was made subject to other terms to be announced at the sale.  The record
contains no evidence as to what these terms were and no evidence that the
plaintiffs could have complied with them.  Their proof on this issue is
therefore subject to the same infirmity discussed in note 16, *supra*.

[18] The evidence was not sufficient to warrant a finding that the plain-
tiffs could have withdrawn funds from the smaller personal trust to pay
the indebtedness in full since there was no evidence that the trustees of
that trust would have exercised their discretion to permit the withdrawal
of principal which was not enough in any event to satisfy the whole in-
debtedness.  There also was no evidence that the plaintiffs could have suc-
cessfully remortgaged their home within the applicable time constraints.

[19] The defendants argue that the Browns cannot recover for deceit
because of the doctrine of "judicial estoppel".  This argument is based on

3. We next take up the plaintiffs' assertion that the judge erred in the disposition of their claim under G. L. c. 93A. The plaintiffs concede that they could not recover under § 9 of c. 93A because no demand letter was sent to the defendants. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975); *Entrialgo* v. *Twin City Dodge Inc.*, 368 Mass. 812, 813 (1975). They argue, however, that the evidence of deceit was sufficient to warrant findings that Gerstein had violated § 2(*a*) of c. 93A, inserted by St. 1967, c. 813, § 1, and that they could recover for the violation under § 11 of c. 93A, inserted by St. 1972, c. 614, § 2. The judge appears, however, to have ruled, as matter of law, that such

---

the assertion that the plaintiffs swore to a complaint, prepared by Gerstein's associate after the foreclosure sale, which states that the plaintiffs were, at the time of the sale, "financially unable to purchase the . . . property"; an assertion at odds with their trial testimony. We are not persuaded by the argument.

While the doctrine of judicial estoppel has been recognized in various contexts by the Federal courts, see *Keystone Driller Co.* v. *General Excavator Co.*, 290 U.S. 240 (1933); *Hazel-Atlas Co.* v. *Hartford Empire Co.*, 322 U.S. 238 (1944); *Yeo* v. *Cohen*, 6 F.2d 411 (D. Mass. 1925); *Hurd* v. *DiMento & Sullivan*, 440 F.2d 1322 (1st Cir.), cert. denied, 404 U.S. 862 (1971); *Duplan Corp.* v. *Deering Milliken Inc.*, 397 F. Supp. 1146 (D.S.C. 1974); see generally 1B Moore's Federal Practice par. 0.405[8] (2d ed. 1983), it has not yet been expressly recognized or defined by the courts of this Commonwealth. Compare G. L. c. 231, § 87 (which renders allegations of fact made in pleadings actually filed in court judicial admissions of the party making them). Even if we were to recognize the doctrine, its application would be inappropriate here. The complaint which is intended to serve as the foundation for an estoppel was never filed in court or otherwise made a part of any court proceedings. We conclude that the statement asserted to create an estoppel constitutes no more than an evidentiary admission by the plaintiffs, the weight of which may be affected by testimony explaining the circumstances under which it was made or contradicting the fact sought to be established. See *Stockbridge* v. *Mixer*, 227 Mass. 501, 512 (1917); *Jordan* v. *MacMelville*, 342 Mass. 478, 480 (1961). We note testimony by Richard Brown that he did not instruct anyone to insert the paragraph in the complaint, that he had nothing to do with the statement, and that it was inserted at Gerstein's behest.

The defendants also make a vague argument that the plaintiffs are precluded because they never advised Gerstein that they had the financial ability to pay off the mortgage. Assuming the point would have relevance, there was no testimony to support the alleged fact.

an action could not be maintained because the attorney-client relationship does not involve "trade or commerce" within the meaning of those words in §§ 2(a) and 11. The defendants urge that this ruling be upheld, relying principally on the line of cases decided under both § 9 and § 11 of c. 93A which exclude essentially private transactions from the statute's application. See *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978); *Manning* v. *Zuckerman*, 388 Mass. 8 (1983); *Weeks* v. *Harbor Natl. Bank*, 388 Mass. 141 (1983); *Newton* v. *Moffie*, 13 Mass. App. Ct. 462 (1982).

In deciding whether Gerstein's alleged wrongdoings occurred within the conduct of trade or commerce as required by § 2(a) of c. 93A, we find the decision of *Guenard* v. *Burke*, 387 Mass. 802, 808-811 (1982), controlling.[20] *Guenard* held that a claim against an attorney by his client for damages in connection with the attorney's execution of an unlawful contingent fee agreement could be maintained under G. L. c. 93A, §§ 2(a) and 9. The decision further held (at 809) that the attorney's reliance on the illegal agreement for his fee constituted, as matter of law, an unfair or deceptive act prohibited by c. 93A, § 2(a), and that the violation entitled the plaintiff to press her claims for multiple damages, attorney's fees, and costs.

While the issue raised here is not expressly discussed in *Guenard*, that decision in straightforward fashion applies c. 93A to the attorney-client relationship. We consider *Guenard* to be authority for the proposition that in circumstances like those here present the practice of law constitutes "trade or commerce" for purposes of liability under c. 93A. We, therefore, proceed no further to ponder the relevance of the private action decisions to c. 93A claims arising out of the attorney-client relationship.

The question whether the plaintiffs were engaged in trade or commerce (a prerequisite to recovery under § 11),[21]

---

[20] The *Guenard* case was decided after the trial of this case.

[21] Section 11 of c. 93A, unlike § 9, requires that the plaintiff also be a "person who engages in . . . trade or commerce." Section 11 does not require a demand letter as a prerequisite to suit.

was one for the judge as the trier of fact. The evidence warranted a finding that the plaintiffs as lessors of commercial property (and perhaps as commercial clients of Gerstein) were acting in a business context and thus engaging in "trade or commerce." See *Linthicum* v. *Archambault*, 379 Mass. 381, 387 (1979). See also *Begelfer* v. *Najarian*, 381 Mass. 177, 190-191 (1980); *Lynn* v. *Nashawaty*, 12 Mass. App. Ct. 310, 313-314 (1981) (identifying and defining a "business context" test to determine whether a particular transaction constitutes trade or commerce under § 11). The evidence also warranted a finding that Gerstein's deceit constituted unfair or deceptive conduct proscribed by the act.[22] We conclude that the c. 93A claim should have been considered on its merits.

4. We reach the plaintiffs' argument that, under the doctrine of partnership by estoppel, Weiner is liable to the same extent as Gerstein.[23]

The common law doctrine of partnership by estoppel is codified for the Commonwealth in G.L. c. 108A, § 16. See *Standard Oil Co.* v. *Henderson*, 265 Mass. 322, 326 (1928). The *Henderson* case establishes that to prevail under this doctrine a plaintiff must prove: (1) that the would-be partner has held himself out as a partner; (2) that such holding out was done by the defendant directly or with his consent; (3) that the plaintiff had knowledge of such holding out; and (4) that the plaintiff relied on the ostensible partnership to his prejudice. *Ibid.* See also Reuschlein & Gregory, Agency and Partnership § 198 (1979); Crane & Bromberg, Partnership § 36 (1968); Rowley on Partnership 423-436 (2d ed. 1960); Painter, Partnership by Estoppel 16 Vand. L. Rev. 327 (1963). Failure to establish any of these requirements precludes recovery on an estoppel theory.

---

[22] We reject the defendants' contention that the *Guenard* case should be distinguished on the basis that it involves a violation of ethical rules, hence a more serious infraction than the deceit complained of here. As previously noted, deceit also violates a lawyer's ethical duty.

[23] There was no evidence that Gerstein and Weiner were members of an actual partnership.

In setting aside the verdict against Weiner, the judge concluded that the evidence was insufficient to satisfy the second requirement, viz., that any holding out was done directly by Weiner or with his consent. On this issue, there was evidence that on October 16, 1972, the Browns had made a check payable to "Gerstein and Weiner" (apparently for legal services unrelated to the instant case) which was deposited in "Gerstein and Weiner clients' account"; that in 1975, in connection with the pending foreclosure, the plaintiffs made out a retainer check in the amount of $150 payable to Gerstein alone; that the plaintiffs thereafter received letters from Gerstein on stationery bearing the legend "Gerstein and Weiner;" and that Gerstein testified in his deposition that Weiner knew that he (Gerstein) was using Gerstein and Weiner stationery. There was no evidence that the plaintiffs ever met Weiner or that Weiner rendered any legal services on their behalf.

The judge's conclusion was correct. The evidence concerning the 1972 check and the account in which it was deposited is irrelevant to establish consent in connection with the 1975 transactions before us. It is of significance that the 1975 retainer check was made payable to Gerstein alone. Hence the plaintiffs' proof on consent came down to Weiner's knowledge that his name was being used on the office stationery. The *Henderson* decision (at 326) establishes, however, that the use of a person's name in a business, even with that person's knowledge, is too slender a thread to warrant a favorable finding on the consent element. See also *Joseph* v. *Greater New Guide Baptist Church, Inc.*, 194 So.2d 127, 130 (La. App. 1966). See generally Mallen & Levit, Legal Malpractice § 33 (2d ed. 1981). Weiner was entitled to judgment in his favor.

5. Two issues that may arise upon retrial may be disposed of summarily.

(a) Although the attorney-client relationship is essentially contractual in nature, the claims to be retried (deceit and c. 93A) basically sound in tort. Consequently, if the plaintiffs prevail after retrial, interest on any sum recovered should be computed in accordance with G. L. c. 231, § 6B.

(b) Retrial of the case will follow the usual judicial assignment procedures in the Superior Court.

6. To sum up: There is to be a new trial limited to (a) whether Gerstein's conduct constituted deceit which prevented the plaintiffs from paying the bank's mortgage in full and (b) whether Gerstein's deceit violated G. L. c. 93A, §§ 2(a) and 11. On the balance of the claims against Gerstein, the plaintiffs have failed in their proof, as they also have on their claim of derivative liability on Weiner's part.

The judgment insofar as it disposes of the claims against the defendant Gerstein except those identified above is affirmed. The balance of the judgment for Gerstein is reversed and a new trial ordered consistent with this opinion. The judgment insofar as it relates to the defendant Weiner is affirmed.

*So ordered.*