Cowin, J.
INTRODUCTION
This case is before the Court on the parties’ cross motions for summary judgment. Plaintiff, Paula M. McDermott (“McDermott”), filed this dental malpractice action against the estate of Dr. Frederick Louis Buchman (“Dr. Buchman”) and his corporation, Frederick L. Buchman, P.C. (known as “OrthoWorld”). Mc-Dermott alleges professional negligence in the insertion of a three-unit bridge in her jaw and in the long-term failure to diagnose that the bridge was ill-fitting. As a result, McDermott claims she suffered pain and discomfort. The complaint also alleges that the defendants violated G.L.c. 93A. For the following reasons, defendants’ motion is ALLOWED in part and DENIED in part, and plaintiffs motion is DENIED.
BACKGROUND
The uncontroverted evidence establishes the following. Dr. Buchman was a licensed orthodontist and sole shareholder of Frederick L. Buchman, P.C., known as OrthoWorld. He was also its president, treasurer and sole director from 1986 until 1990, when he closed the office due to his ill health. The business of OrthoWorld was the practice of orthodonture and general dentistry, each having a separate section of the office. OrthoWorld provided the equipment, instruments and supplies for the entire office. OrthoWorld also maintained all dental records and handled all patient billing. The sign on the front door said simply “OrthoWorld” with a smaller sign below it reading “Frederick L. Buchman, P.C.”
In early 1989, Paula McDermott saw a flier for OrthoWorld in a window of a shopping center in Burlington. The flier advertised quality and affordable dental care with a reduced rate for cleanings and examinations. She went to OrthoWorld and on her first visit she was introduced to and treated by Dr. Jose DeJesus.
Over the course of McDermott’s treatment at OrthoWorld, Dr. DeJesus installed a temporary and permanent three-unit bridge in the upper-left quadrant of her jaw. After he installed the permanent bridge and she experienced severe pain from it, she began to see another OrthoWorld dentist, Dr. Vahid Varasteh. (McDermott was told that Dr. DeJesus had returned to Puerto Rico.) A few months later, a third OrthoWorld dentist, Dr. Charles McMillan, treated her. Dr. Buchman never personally treated McDermott. He never consulted with the other three dentists regarding her treatment.[1] In July 1990, McDermott sought treatment from a fourth dentist, Dr. Barry Lehman of Woburn. Unlike the three dentists who had already treated McDermott, Dr. Lehman was not previously affiliated with OrthoWorld. However, Dr. Buchman had transferred the OrthoWorld general dentistry practice to Dr. Lehman by agreement dated May 29, 1990.
DISCUSSION
Summary judgment shall be granted when there are no genuine issues as to any material fact and when the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and of establishing that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
I. ESTATE OF DR. BUCHMAN
To establish a prima facie dental malpractice claim, the plaintiff must show that (1) a doctor-patient relationship existed; (2) the defendant did not conform to good medical practice; and (3) the defendant’s negligence caused her injury. Doherty v. Heilman, 406 Mass. 330, 333 (1989). See also Kapp v. Ballantine, *162 380 Mass. 186, 193 (1980). Because the plaintiff cannot establish a doctor-patient relationship with Dr. Buchman, her claim against his estate must fail. See Perez v. Bay State Ambulance & Hosp. Rental Service Inc., 413 Mass. 670, 676 (1992).
Plaintiff herself testified that Dr. DeJesus, Dr. Varasteh and Dr. McMillan were the only dentists who treated her at OrthoWorld. All the evidence establishes that Dr. Buchman never treated McDermott or consulted with the other dentists regarding her care and treatment. Accordingly, Dr. Buchman cannot be directly liable to the plaintiff because no doctor-patient relationship existed between them.
Plaintiff argues that Dr. Buchman is vicariously liable because of his status as officer, director and sole shareholder of OrthoWorld. Orthoworld, the entity with which McDermott dealt, was a professional corporation. Professional corporations are governed by G.L.c. 156A. Chapter 156A, §4(a) provides:
All of the provisions of chapter one hundred and fifty-six B shall be applicable to professional corporations and such corporations shall enjoy the powers and privileges, and be subject to the duties, restrictions and liabilities of corporations organized under said chapter, except where inconsistent with the provisions of this chapter.[2]
Generally, a shareholder of a corporation is not individually liable for the activities of a corporation. See G.L.c. 156B, §4. This rule applies as well to professional corporations. See G.L.c. 156A, §6(a):
Except as otherwise provided by law or regulation, the personal liability of a shareholder of a professional corporation organized under this chapter shall be no greater in any respect than that of a shareholder of a corporation organized under chapter one hundred and fifty-six B.
Dr. Buchman’s status as an officer and director of the professional corporation render him personally liable only for torts committed at his direction or with his direct personal involvement. Union Mut. Life Ins. Co. v. Chrysler Corp., 793 F.2d 1, 11 (1st Cir. 1986); Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 907 (1st Cir. 1980); LaClairv. Silberline Mfg. Co., Inc., 379 Mass. 21, 29 (1979). Since there is no evidence that Dr. Buchman was personally involved in McDermott’s treatment, his status as an officer and director is not a basis for imposing liability on him.
In closely held corporations such as OrthoWorld, the corporate veil may be pierced if there has been financial impropriety. In Evans v. Multicon Constr. Corp., 30 Mass.App.Ct. 728, 733 (1991), the court listed criteria to consider in deciding whether to disregard the corporate form in closely held corporations:
(1) common ownership, (2) pervasive control; (3) confused intermingling of business activity assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud.
(Citing Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754F.2d 10,14-16 (1st Cir. 1985).) In those cases where the court has looked through the corporate form, there has been “an element of dubious manipulation and contrivance [and] finagling, such that corporate identities are confused and third parties cannot be quite certain with what they are dealing.” Evans, supra, 30 Mass.App.Ct. at 736. The record in this case does not support such a finding. Although Dr. Buchman was the president, treasurer and sole shareholder of the corporation, this is not a reason for piercing the corporate veil. G.L.c. 156A §6(a). Similarly, the fact that Dr. Buchman signed the professional corporation’s annual reports (1986-1990), articles of incorporation and business certificates (1986, 1990) is of no avail to McDermott in this area because some person must sign papers on behalf of a corporation. See, e.g., G.L.c. 156A §7; G.L.c. 156B, §12. Under the established standards, this Court would not be warranted in piercing the corporate veil. Accordingly, summary judgment is allowed as to the estate of Dr. Buchman.
II. FREDERICK L. BUCHMAN, P.C.
McDermott argues that even if no doctor-patient relationship existed between Dr. Buchman and herself, the defendant professional corporation should be estopped from denying liability for the other dentists’ negligence because the dentists held themselves out to the public as a single enterprise. The Massachusetts case of Brown v. Gerstein, 17 Mass.App.Ct. 558 (1984), is instructive in this area.[3] The Brown court stated that a plaintiff arguing an estoppel theory must establish “(1) that the would-be partner has held himself out as a partner; (2) that such holding out was done by the defendant directly or with his consent; (3) that the plaintiff had knowledge of such holding out; and (4) that the plaintiff relied on the ostensible partnership to [her] prejudice.” Id. at 571. If the plaintiff cannot establish all of these requirements, she cannot recover on an estoppel theory. Id.
The summary judgment material reveals that McDermott has satisfied the Brown test. The first part of the test is met as it is clear that the three general dentists held themselves out as part of the professional corporation. Although in his deposition Dr. Varasteh described his status at OrthoWorld as an independent contractor, the sign on the front door to the office said simply “OrthoWorld” with a smaller sign below reading “Frederick L. Buchman, P.C.” OrthoWorld maintained all patient files. Additionally, none of the general dentists did their own separate billing or provided their own dental equipment, instruments or supplies. These facts establish *163 that the general dentists were held out to the public as part of the enterprise.
As to prong two of the test the record establishes that Dr. Buchman at a minimum consented to the holding out of all three dentists as part of the professional corporation. In a Renewal Business Certificate dated March 5, 1990, Dr. Buchman officially declared that he was conducting an “Orthodontic and General Dentistry” practice under the title of OrthoWorld.
The plaintiff also carries her burden with respect to the third prong of the Brown test, i.e., whether she had knowledge of such holding out. The record supports such knowledge. For example, according to plaintiffs deposition, she contacted OrthoWorld and made an appointment. “I went in and I was introduced to Dr. Jose DeJesus who is the dentist.” This description indicates that she did not initially know Dr. DeJesus, but rather that she made an appointment with a dentist who was part of the association. She went to OrthoWorld as an entity, not to one particular dentist. Additionally, when asked whether she considered going somewhere else for her dental work, McDermott replied in the negative stating, “I had just spent $1,500.00 there and I wanted them to fix the problem that I believe they had caused.” (Emphasis added.) Since at that time.only Dr. DeJesus had worked on her jaw, this again indicates that the plaintiff viewed the dentists as part of an association.
In regard to the fourth prong of the Brown test, it is undisputed that plaintiff suffered injury as a result of the OrthoWorld dental work. Thus, the fourth prong of the Brown test has been satisfied. Because Mc-Dermott has fulfilled each element in the Brown test, OrthoWorld is estopped from denying liability for the general dentists’ negligence. Accordingly, summary judgment is denied as to Frederick L. Buchman, P.C.
III. G.L.c. 93A CLAIMS
According to G.L.c. 93A, §9(1), any person who has been injured by another’s use or employment of any method, act or practice declared to be unlawful by section two[4] or any rule or regulation issued thereunder may bring an enforcement action in the Superior Court. Section 9(3) provides, in relevant part, “At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered shall be mailed or delivered to any prospective respondent."
Plaintiffs c. 93A demand letter fails to meet the criteria set out in §9(3). It does not list with specificity the alleged unfair or deceptive acts or practices of Dr. Buchman. See Spring v. Geriatric Auth of Holyoke, 394 Mass. 274, 287-88 (1985); Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 813 (1975). “A negligent act standing by itself does not give rise to a claim under c. 93A. There must in addition be evidence that the negligence was or resulted in an unfair or deceptive act or practice.” Squeri v. McCarrick, 32 Mass.App.Ct. 203, 207 (1992). As a consequence, summary judgment is to be granted on the plaintiffs c. 93A claims for plaintiffs failure to comply with the statute’s procedural prerequisites.[5]
IV. McDERMOITS CLAIM FOR SUMMARY JUDGMENT
McDermott did not present any argument or memorandum to support her cross motion for summary judgment. This is a negligence claim with contested factual issues. Summary judgment for the plaintiff is inappropriate.
ORDER
For the foregoing reasons, this court hereby orders that summary judgment is (1) GRANTED as to the negligence claims asserted against the estate of Dr. Frederick Louis Buchman; (2) DENIED as to the negligence claims against Frederick Louis Buchman, P.C. (known as OrthoWorld); (3) GRANTED as to the c. 93A claims against both defendants; and (4) DENIED as to plaintiffs cross motion for summary judgment.

McDermott’s sole contact with Dr. Buchman arose from correspondence involving a billing dispute.

Chapter 156B, §3 provides that said statute applies to “all domestic corporations having capital stock ... for the purpose of canying on business for profit” except certain enumerated corporations which have no bearing on this case.

Although Brown involved the common law doctrine of partnership by estoppel, the same general principles are analogous in the context of a professional corporation such as OrthoWorld.

Section 2(a) provides, “Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.”

Even if McDermott’s demand letter met the requirements of c. 93A, §9(3), this claim would fail on the merits. The record indicates that Dr. Buchman transferred the general dentistry practice at OrthoWorld to Dr. Lehman by agreement dated May 29, 1990. Thus, it was not an unfair or deceptive act or practice for Dr. Buchman, in 1991, to refer the Board of Registration of Dentistry to Dr. Lehman for McDermott’s dental records of 1989-90.