William J. GOSSELIN, Plaintiff,

v.

James L. O'DEA III;  and Field, Hurley, Webb & Sullivan, Defendants.

No.  Civ.A. 96–12324–GAO.

United States District Court, D. Massachusetts.

March 5, 1999.

Edwin A. McCabe, McCabe Brown Tipton, Boston, MA, for William J. Gosselin.

James L. O'Dea, III, Washington, DC, pro se.

William N. Hurley, Lowell, MA, for Raymond A. Webb, Arthur C. Sullivan, Jr., William N. Hurley, Marshall L. Field.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff, William J. Gosselin, filed this eleven-count suit asserting statutory and common law claims centering on alleged legal malpractice by the first defendant, James L. O'Dea III. The second named defendant, the law firm of Field, Hurley, Webb & Sullivan ("Field, Hurley"), is sued principally on the theory that O'Dea's professional relationship with the firm exposed it to liability for any malpractice by O'Dea. The plaintiff also alleges

that Field, Hurley affirmatively deceived and defrauded him by representing that O'Dea was a partner in the firm, and thus, by implication, that the firm would be involved in O'Dea's work for him. Field, Hurley has now moved for summary judgment dismissing the plaintiff's claims. For the following reasons, the motion is granted.

### Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a motion of law." Fed.R.Civ.P. 56(c). For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in the nonmovant's favor. *See Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 684 (1st Cir.1994). "The evidence cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." *Id.* at 684. For purposes of summary judgment, the Court draws all reasonable inferences from the record in the light most favorable to the party opposing the motion, *see Massachusetts v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 986 (1st Cir.1995), but the burden is on that party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Facts

In April 1992, Gosselin, a second mate on a merchant marine vessel, was discharged from duty for apparent intoxication. He filed a grievance under an applicable collective bargaining agreement, and in the ensuing arbitration proceedings he was represented by an attorney provided by his union. Although an arbitrator found in October 1992 that Gosselin's discharge had not been justified, he also concluded that as of the date of his discharge Gosselin had been medically unfit for duty and deemed him to have been on medical leave as of that date. The arbitrator directed the parties to consider Gosselin's fitness to return to duty, and to return to arbitration if they could not agree.

The defendant O'Dea is a cousin of Gosselin's wife. Shortly before the arbitrator issued his decision, the Gosselins happened to meet O'Dea at a family occasion. Mrs. Gosselin knew that O'Dea was a lawyer practicing in Washington, D.C. The Gosselins spoke to him about the arbitration and about Gosselin's employment status generally. O'Dea told the Gosselins that he now had an office in Lowell, Massachusetts, "with" Field, Hurley. He asked them to keep him apprised of developments in the arbitration. After the arbitrator issued his decision, Gosselin contacted O'Dea in Washington to tell him the result and to consult with him about pursuing a claim for back pay. O'Dea arranged to meet Gosselin to discuss the matter when O'Dea was in Lowell visiting his family for the Thanksgiving Day holiday.

On November 24, 1992, Mr. and Mrs. Gosselin met with O'Dea at the offices of Field, Hurley in Lowell. O'Dea's name was listed on the building directory at the bottom of the list of lawyers in the firm. At that meeting, O'Dea undertook to represent Gosselin with respect to claims against his employer for back pay and for discrimination under the Americans with Disabilities Act. The Gosselins also told O'Dea that they were experiencing financial difficulties, and he gave them some advice about bankruptcy proceedings.

After his return to Washington, O'Dea prepared a bankruptcy petition for the Gosselins. The Gosselins lived in New Hampshire, and O'Dea needed to find a New Hampshire lawyer to file the petition there. He asked Arthur Sullivan of Field, Hurley to recommend someone, and Sulli-

van recommended a lawyer not connected with Field, Hurley. O'Dea also arranged to have the Gosselins sign the petition at the offices of Field, Hurley. When Mrs. Gosselin appeared at the firm's offices to do so, she had some general questions about bankruptcy which were answered by Sullivan. The Gosselins had no other dealings with any lawyer at Field, Hurley.

In early 1993, Gosselin was discharged by his employer once again, and again his union lawyer filed and prosecuted a grievance on his behalf. O'Dea monitored the arbitration for Gosselin and apparently sat in on some of the arbitration sessions. In particular, O'Dea advised Gosselin to reject a settlement offer from the employer for the reason that Gosselin's claims for back pay and discriminatory discharge were worth much more than the proposed settlement. Gosselin followed O'Dea's advice and rejected the settlement. Thereafter, the arbitrator decided the case adversely to Gosselin. O'Dea never filed any other claim on Gosselin's behalf.

### Discussion

▮ The carelessness of the plaintiff's pleading makes the disposition of the present issues more involved than it should be. The complaint identifies the firm Field, Hurley as a defendant. Under Massachusetts law, the ordinary rule is that plaintiff may not sue a general partnership as an entity, but rather must sue each of the general partners. *See Gorovitz v. Planning Bd. of Nantucket*, 394 Mass. 246, 475 N.E.2d 377, 380 (1985); *Shapira v. Budish*, 275 Mass. 120, 175 N.E. 159, 161 (1931). The complaint's failure to name the individual putative partners thus is a

defect that itself would warrant dismissal, though the defect might be cured by leave to amend. Apparently recognizing the anomaly, in answering the complaint the "Field, Hurley" defendants have responded not only as the firm, to comport with the complaint's explicit description, but also as the individual participants: Marshall L. Field, William N. Hurley, and Arthur C. Sullivan. *See* Answers to First Am.Compl. of Defs.' Field, Hurley and Sullivan, individually. In these circumstances, the Court *sua sponte* orders an amendment of the complaint to add the three individuals, sued in their capacities as partners of the alleged partnership. *See* Fed.R.Civ.P. 15(b).

A second problem is that contrary to the complaint's characterization of Field, Hurley, it appears undisputed that the firm is *not* a partnership. The plaintiff offers no evidence to contradict Sullivan's deposition testimony that there is no partnership and that though the "members" of the firm share certain expenses, each runs his own practice independently.

The plaintiff's theory against the Field, Hurley defendants is that they are vicariously liable for O'Dea's alleged malpractice not because O'Dea was *actually* a partner in the partnership, but because the firm allowed him to be held out to Gosselin as a partner. Since the undisputed evidence is that there was no partnership, this theory needs adjustment. Properly presented, the theory would be that one or more of the individual defendants, acting either alone or jointly (though not as partners), held out O'Dea as someone for whose actions he or they would be responsible.[1]

---

1. The plaintiff relies on two broad legal theories. First, he asserts that the Field, Hurley defendants are vicariously liable by reason of their relationship with O'Dea and how they permitted that relationship to appear to someone in Gosselin's position. *See* Counts I through VIII. Separately, he claims that the Field, Hurley defendants negligently or fraudulently misrepresented their relationship with O'Dea. *See* Counts IX through XI. From the record presented on this motion, however, it

appears that the evidence relied on to support both theories is the same. That is, the plaintiff does not claim any express misrepresentation by Field, Hurley or Sullivan about O'Dea, but rather he claims that various objective facts—O'Dea's use of the Field, Hurley offices, his name on the building directory, Sullivan's encounter with Mrs. Gosselin when she signed the bankruptcy petition, etc.— amounted to a representation of a relationship. As a result, it is not necessary to evalu-

Under the principles the plaintiff relies on, to prove that O'Dea was a partner of any of the other defendants, Gosselin would have to show: (1) that O'Dea held himself out to Gosselin as a partner of the other defendants; (2) that one or more of the others directly or indirectly held O'Dea out as a partner; (3) that Gosselin had knowledge of the holding out; and (4) that Gosselin relied on the ostensible partnership to his prejudice. *Brown v. Gerstein,* 17 Mass.App.Ct. 558, 460 N.E.2d 1043, 1052 (1984) (*citing Standard Oil Co. v. Henderson,* 265 Mass. 322, 163 N.E. 743, 744 (1928)). *See also* Mass.Gen.Laws ch. 108A, § 16. The evidence offered by the plaintiff in opposition to the motion for summary judgment is insufficient to avoid summary judgment.

■ As to the holding out, the evidence in Gosselin's favor is enough to show that there was some sort of relationship between O'Dea and the other defendants, but not enough to support an inference that O'Dea's relationship was that of a partner. First, O'Dea himself never expressly described himself as a partner of the firm. The plaintiff's evidence is that when the Gosselins first talked with O'Dea about obtaining his advice, O'Dea indicated that he was "with" Field, Hurley. Despite this ambiguous reference, however, it appears that his written correspondence with the Gosselins was conducted on his own, not the firm's, letterhead, though his own letterhead included Field, Hurley's address in Lowell along with O'Dea's own office address in Washington. While suggestive of some relationship, this evidence is a good bit short of supporting an inference that O'Dea held himself out as a partner.

■ Similarly, none of the other defendants ever expressly described O'Dea as a partner. The plaintiff would have the jury draw that inference based on assorted circumstantial evidence: O'Dea met clients at an office within the Field, Hurley offices, where his name was listed with the other defendants on the directory in the building lobby. While O'Dea was in Washington, he arranged for the Gosselins to sign the bankruptcy petition (which he had prepared) at the Field, Hurley offices, and when Mrs. Gosselin went there, Sullivan spoke with her about whether the filing of the bankruptcy petition would stave off a threatened real estate foreclosure. At some point, O'Dea was identified publicly as being "Of Counsel" to the firm, but it appears that this occurred sometime in 1993, well after Gosselin had hired O'Dea. Brown Aff.Ex. C at 7. In fact, the evidence is that Gosselin was unaware of the "Of Counsel" designation until after he had become dissatisfied with O'Dea, when it was called to Gosselin's attention in 1994 by a lawyer he had consulted about bringing a claim against O'Dea. *See* Defs.' Mem. Ex. 3 at 85.

The guiding cases are few, but what they indicate is that the question whether enough has been shown to justify a finding of partnership by estoppel is highly specific to each particular case. All in all, this case is more like the *Brown* and *Standard Oil* cases, where the estoppel theory was rejected as a matter of law, than like the case chiefly relied on by the plaintiff, *Atlas Tack Corp. v. DiMasi,* 37 Mass.App.Ct. 66, 637 N.E.2d 230 (1994), where the evidence was held sufficient to warrant submission of the issue to a jury. In *Atlas Tack,* the putative partner corresponded not on personal stationery but on letterhead of the firm, and bills submitted to the plaintiff apparently called for payment to be made to the firm. There are other distinctions as well, but these illustrate why that case is inapposite.

The motion of the individual defendants Field, Hurley, and Sullivan for summary judgment is GRANTED, and all claims except those against the defendant O'Dea are DISMISSED WITH PREJUDICE.

ate the evidence in support of each theory

separately.