ALCIDE BACHAND & others *vs.* HARVEY J. VIDAL & another.

Berkshire.    September 18, 1951. — November 15, 1951.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Negligence,* Motor vehicle.  *Partnership,* Partnership property, Partnership business.  *Agency,* What constitutes, Scope of authority or employment.  *Motor Vehicle,* Registration, Operation, Dealer, Motor vehicle of partnership.  *Evidence,* Relevancy and materiality, Opinion. *Practice, Civil,* Mistrial.

Evidence that about one half hour after an automobile had been parked on a street adjacent to the curb headed downgrade it started to move without anyone being near it and collided with another vehicle warranted a finding of negligence in the manner in which it was parked.

The act of one of the members of a partnership in attaching dealer's number plates of the partnership to an automobile owned by it would cause the automobile to become "registered in the name of" the partnership within G. L. (Ter. Ed.) c. 231, § 85A.

Parking an automobile on a street was an incident of its operation.

Certain evidence, together with G. L. (Ter. Ed.) c. 231, § 85A, warranted a finding that one of two partners engaged in the used automobile business was legally responsible for a collision resulting from negligence of the other partner in the manner in which he parked a used automobile on a street several hours after he had purchased it and had attached to it dealer's number plates of the partnership.

·A question to a witness as to whether a policy of insurance was "in effect" on a certain material date was only intended to ascertain whether the policy was still being carried by the insured on that date, not the then legal status of the policy, and did not call for an opinion on a matter of law.

Evidence that persons who had formed a partnership to engage in the used automobile business were at a material subsequent time still insured under a motor vehicle liability insurance policy issued to them as partners was relevant to show that the partnership still existed at that time.

The disposition of a motion to discharge the jury on the alleged ground that improper and incompetent evidence had been admitted before counsel could object lay in the discretion of the trial judge.

TORT.    Writ in the Superior Court dated January 12, 1948.

The action was tried before *Broadhurst*, J.

*J. M. Shea*, for the defendants.

*J. N. Alberti*, (*M. Freedman* with him,) for the plaintiffs.

WILLIAMS, J.   This is an action of tort to recover compensation for personal injuries, consequential damage and property damage resulting from a collision of automobiles on Union Street, North Adams, on October 11, 1947.   The plaintiffs are Alcide Bachand, his wife Ida, and their three minor children, Ida, Alcide, and Edward.   The defendants are Harvey J. Vidal and Emil J. Raczka.   Of the thirty counts originally included in the plaintiffs' declaration ten alleging the joint negligence of both defendants were waived during the trial.   The twenty remaining are counts for negligence against the defendants individually, alleging the receipt of personal injuries by all five plaintiffs, damage to the automobile of Alcide Bachand, and consequential damage to him through the injuries to his wife and children. After verdicts for the plaintiffs on all of these counts the cases are here on the exceptions of the defendants to the judge's denial of their motions for directed verdicts, motions to strike out evidence, and motion to discharge the jury.

There was evidence that about 11:30 P.M. on October 11, 1947, Alcide Bachand, accompanied by his wife and children, was driving his automobile in an easterly direction on Union Street at a point where there was approximately a six per cent upgrade.   An automobile without lights and without an operator came downgrade from the opposite direction, collided with the Bachand automobile, and caused the injuries to its occupants and the damage to the automobile for which this action is brought.   This driverless automobile was a "1930 Dodge Sedan" which had been purchased by the defendant Vidal on the afternoon of the accident.   He testified that he used the automobile that evening to take his wife shopping and to make a personal social call.   On returning he parked the automobile shortly before 11 P.M. in front of his house on Union Street headed downgrade with the right front wheel at a "slight angle" against the curb.   The "body might have been a foot from

the curb but he was positive the right wheel was up against the curb though he didn't look to see." He did not leave any parking lights on and the doors were unlocked. He put the hand brakes on and left it in "second gear." He and his wife entered the house. Later he "heard a gang of boys outside making a lot of noise . . . he didn't look to see what they were doing; in about twenty minutes" as the result of a telephone call he went out and found his automobile had run down the hill and collided with the Bachand automobile about 250 feet from where he had parked it.

Although the testimony of Vidal as to the manner in which he parked the automobile was uncontradicted, the jury might, in whole or in part, disbelieve it. There was evidence from a passing autoist that she saw the automobile start to move and that there was no person near it at the time. It could be found on the evidence that it was more probable that the automobile started downgrade because Vidal had failed to exercise care in securing its position against the curb than from any independent cause which he could not reasonably have anticipated and for which he was not responsible. *Litos* v. *Sullivan*, 322 Mass. 193, 194–195. *Kirsch* v. *J. G. Riga & Sons, Inc.* 264 Mass. 233. See also *Dorne* v. *Adams*, 243 Mass. 438; *Glaser* v. *Schroeder*, 269 Mass. 337. The plaintiffs were not obliged to show that a specific negligent act or omission of Vidal was the cause of the automobile starting. *Fone* v. *Elloian*, 297 Mass. 139, 141.

The evidence presented a case for the jury and there was no error in the denial of the defendant Vidal's motion for a directed verdict.

The question whether the defendant Raczka, who was not present when the automobile was parked, could also be found responsible for the collision depends on whether, at the time of its occurrence, he was a partner of Vidal and Vidal was using the automobile in the business of the partnership. There was evidence that the two defendants "organized a partnership business on January 1, 1947, under

name, Used Car Sales," to buy and sell used automobiles. They obtained a license from the municipal authorities and three sets of dealers' number plates from the registry of motor vehicles. They "continued to operate under the same registration and under the same license to sell second hand cars until the end of 1947," at which time "the partnership terminated." They maintained a "three car garage" in North Adams and shared the expenses of "rent, lights and telephone." The dealers' plates of the partnership were attached to all automobiles purchased by them. Testimony was introduced by the defendants that after June, 1947, because of the illness of Vidal each partner bought and sold automobiles on his own account taking for himself whatever profit he made and that, of the eight automobiles purchased during the partnership, they shared profits on only one. Vidal testified that he bought the Dodge sedan to sell for his own profit but "it was bought under that license, partnership license, and for a few hours I would say it was owned as partnership property — Used Car Sales." One Lampiasi, a dealer from whom Vidal purchased the automobile, testified that it was sold to Used Car Sales. Vidal attached one set of the partnership dealers' plates to the automobile and these plates remained on it until the time of the collision.

From this evidence the jury could find that on October 11, 1947, the defendants were partners engaged in the business of dealing in used automobiles and that the automobile in question was owned by the partnership. Even if they gave full credit to the testimony that the purchase by Vidal was intended by him to be for his personal profit, they could still find that title to the automobile vested in the partnership. Irrespective of such ownership, Raczka could be found liable to the plaintiffs provided that the automobile was being used by Vidal in carrying out the business of the partnership. Partners are the general agents of each other while transacting the partnership business and one partner is liable for the tort of another committed in the course and within the scope of the business of the firm. *Teague* v. *Martin*, 228 Mass. 458, 461. *Bunnell* v. *Vrooman*, 250 Mass. 103,

106.   Although there is little evidence as to the use Vidal was making of the automobile on the night of the accident, it appears that after its purchase, which was at 4:30 P.M., he drove it to the Used Car Sales garage and in all drove it about two miles, observing while operating it that the brakes were in good condition.   We think that the jury could find that one of his objects in driving the automobile that night was to determine its condition for purposes of resale.   The plaintiffs, moreover, could rely on G. L. (Ter. Ed.) c. 231, § 85A, which provides that evidence that an automobile at the time of an accident was registered in the name of the defendant as owner shall be prima facie evidence that it was then being operated by and under the control of a person for whose conduct the defendant was legally responsible.   We have already pointed out that there was evidence that the partners were the owners.   By the act of Vidal in placing the number plates of the partnership on the automobile it became registered in the name of the partnership.   *Legarry* v. *Finn Motor Sales, Inc.* 304 Mass. 446.   The act of parking the automobile on the street was an incident of its operation.   *Commonwealth* v. *Henry,* 229 Mass. 19, 21–22.   *Jenkins* v. *North Shore Dye House, Inc.* 277 Mass. 440, 445.   *Blair* v. *Boston Elevated Railway,* 310 Mass. 1, 3.   *Diggins* v. *Theroux,* 314 Mass. 735, 736–737. A prima facie case that Vidal was acting as an agent of the partnership and thereby of his partner Raczka in circumstances whereby the latter was responsible for the former's acts was presented.   There was no error in denying the defendant Raczka's motion for a directed verdict.

There remain for consideration a question of evidence and a motion by the defendants for the discharge of the jury.

While Raczka was on the witness stand he testified, "The partnership was and wasn't broken up before October 11th, we were continuing the same as we always were, except we were buying and selling our own cars."   The judge then asked, "You carried insurance, of course, liability insurance?"   The witness answered, "Yes."   The judge inquired, "Under the compulsory insurance law?   That policy was

issued to whom, or in what name?" The witness answered, "To both of us." The judge then asked, "Was that policy in effect on October 11?" The witness answered, "Yes." The judge continued, "That was under both of your names as a partnership, d/b/a Used Car Sales, isn't that right?" The answer was "Yes." Thereupon the counsel for the defendants said, "Just a moment, I would like to have that stricken out. The answer was 'yes.'" The judge refused to strike. Counsel then said, "I would like to make a point to take an exception — this point; you asked him if it was in effect on October 11 and he says 'yes.' I think that is a conclusion of law and I object to the answer and ask your Honor to strike it out." The judge refused to strike out the answer and saved the defendants' exception.

This exception was not based on an objection seasonably made. No objection was made to the questions when propounded to the witness by the judge. Nor was the motion to strike the answer "Yes" made until after a following question had been asked and answered. The answer of the witness was responsive, *Commonwealth* v. *Valentino*, 257 Mass. 419, 420, and no suggestion was made that the answer came before there was time to object. See *Buckley* v. *Frankel*, 262 Mass. 13, 15. The question of the judge was competent and did not require an opinion on a matter of law. The inquiry was intended to ascertain not the legal status on October 11 of an issued policy of liability insurance but whether on that date such a policy was still carried by the defendants. If they were continuing to insure their liability as partners, such action on their part would be evidence that the partnership continued to exist. *Rosseau* v. *Deschenes*, 206 Mass. 469, 471–472. See *Heywood* v. *Ogasapian*, 224 Mass. 203, 206; *Marsh* v. *Beraldi*, 260 Mass. 225, 232–233.

On the next day of the trial after the motion to strike the defendants presented a motion to discharge the jury on the grounds that "improper and incompetent evidence has been received" relating to compulsory insurance; that the question whether "this car was insured at the time of the action set up in the plaintiffs' declaration is a question of law for

the court"; and that "the evidence admitted indicating that the car was covered by compulsory insurance was inaccurate, inadmissible and incompetent and was admitted before the defendants' counsel could object." To the denial of this motion the defendants excepted.

No error of law appears. The evidence objected to was competent and, as above stated, no complaint was made at the time of its admission that the defendants did not have an opportunity to object. The allowance of a motion of this character is discretionary with the trial judge. *Hess* v. *Boston Elevated Railway,* 304 Mass. 535, 541. *Shea* v. *D. & N. Motor Transportation Co.* 316 Mass. 553, 555. *Commonwealth* v. *Bellino,* 320 Mass. 635, 644.

*Exceptions overruled.*