Katherine ANDREWS, Plaintiff

v.

Barry D. ELWELL, Paul W. Pappas, John F. Carlson, and Neil Colicchio, Defendants

No. CIV.A.03–10825–REK.

United States District Court, D. Massachusetts.

March 24, 2005.

36

Valeriano Diviacchi, Diviacchi Law Office, Boston, MA, for plaintiff.

Daniel P. O'Brien, Posternak, Blankstein & Lund, Boston, MA, Patrick J. Dolan, Peabody & Arnold LLP, Boston, MA, for Defendant Barry D. Elwell.

Steven Joseph Bolotin, Morrison Mahoney LLP, Boston, for Defendant Paul W. Pappas, John F. Carlson, Neil Colicchio.

John R. Hitt, Attorney General's Office, Boston, MA, for Interested Party Massachusetts Department of Social Services.

## Opinion

KEETON, Senior District Judge.

### I. Pending Matters

Pending for decision are matters related to the following filings:

(1) Motion for Summary Judgment of Paul W. Pappas, John F. Carlson, and Neil Colicchio (Docket No. 37), Memorandum of Law in Support of the Motion for Summary Judgment of Paul W. Pappas, John F. Carlson, and Neil Colicchio (Docket No. 38), and Statement of Facts and Law in Support of the Motion for Summary Judgment of Paul W. Pappas, John F. Carlson, and Neil Colicchio (Docket No. 39) (all filed December 9, 2004); and

. (2) Plaintiff's Opposition to Defendants Pappas, Carlson, and Colicchio's Motion for Summary Judgment (Docket No. 43) and Plaintiff's Response to Defendants' Statement of Facts/Statement of Supplemental Facts (Docket No. 44) (both filed December 23, 2004).

## II. Factual and Procedural Background

The plaintiff, Katherine Andrews, has brought this action for attorney malpractice against defendants Barry Elwell, Paul Pappas, John Carlson, and Neil Colicchio. The claim stems from Elwell's representation of Andrews in Lawrence Juvenile Court. Pappas, Carlson, and Colicchio (collectively "movants") have moved for summary judgment in their favor on the grounds that they cannot be held vicariously liable for Elwell's alleged negligence.

## III. Disposition of the Motion for Summary Judgment

### A. Legal Standard for Summary Judgment

Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact exists. *See* Fed. R.Civ.P. 56. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Then the non-moving party must demonstrate that "*every essential element* of its claim or defense is at least trialworthy." *Price v. General Motors Corp.,* 931 F.2d 162, 164 (1st Cir.1991) (italics in original).

A dispute is genuine if it "may reasonably be resolved in favor of either party." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997). Facts are "material" if they possess "the capacity to sway the outcome of litigation under the applicable law." *Id.* The facts in genuine dispute must be significantly probative in order for summary judgment to be denied; "conclusory allegations, improbable inferences, and unsupported speculation will not suffice." *Id.*

### B. Material Facts

The Massachusetts Department of Social Services ("DSS") first became involved with Katherine Andrews (*née* Assid) and her three children in 1996. (Def. Statement, Docket No. 39, ¶¶ 1, 2) From 1996 to 1999, Andrews suffered from various mental problems, which resulted in repeated hospitalizations. (Def. Memo., Docket No. 38, Exh. 1) Pursuant to several Voluntary Placement Agreements signed by Andrews, two of her children were placed in foster care, the third was placed with Andrews's parents. (*Id.*) On November 4, 1999, Andrews was in contact with DSS, stating that she was going to be evaluated at Pembroke Hospital and "could not make provisions for her children." (*Id.*) That same day, DSS filed a Care and Protection Petition seeking legal and physical custody of all three children. (*Id.*) On November 8, 1999, the Commonwealth of Massachusetts found Andrews indigent and appointed Elwell to represent Andrews in proceedings against DSS. (*Id.,* Exh. 2) On June 29, 2000, Andrews appeared in Juvenile Court and waived her parental rights. (Def. Statement, Docket No. 39, ¶ 28) Andrews bases her suit against Elwell and his alleged partners upon Elwell's representation of her in the proceedings that led to the termination of her parental rights.

I will now turn to the facts that are relevant to determining whether a partnership, in fact, existed between Elwell and the movants, or whether a partnership-by-estoppel applies in this case. Elwell shared an office with Pappas and Carlson during his representation of Andrews; Colicchio also shared the office beginning "some time" in 2002. (Def. Statement, Docket No. 39, ¶¶ 16, 17) Andrews never met with Elwell at his office, but instead only met with Elwell at the courthouse. (*Id.,* at ¶ 12)

Andrews did, however, telephone Elwell's office on a number of occasions. (Pl. Resp., Docket No. 44, Exh. K, Andrews Dep., [hereinafter "Andrews Dep."] at 96) When Andrews called Elwell's office, someone answered the telephone by stating "Pappas, Carlson, and Elwell," and Andrews would ask for Elwell. (Pl. Resp., Docket No. 44, Exh. J, Andrews Aff.) On one occasion, Pappas answered the telephone and identified himself. (*Id.*) Pappas also told Andrews that Elwell was out and apparently took a message from Andrews. (Andrews Dep., at 89) The defendants also shared a voice mail system in which a caller could press a certain number to leave a message for a particular attorney. (*Id.*, at 89–90)

Elwell made several representations to the court and others that he was affiliated, in some way, with Pappas, Carlson, and later Colicchio. Elwell signed his Pre-Trial Memorandum before the Juvenile Court as follows:

Barry D. Elwell, Esq., BBO # 631933

Attorney for the Mother

PAPPAS, CARLSON & ELWELL

Musgrove Building

Two Elm Square

Andover, MA 01810

(978) 474–8080

(Pl. Resp., Docket No. 44, Exh. C, at 6) Elwell's filings in 2003 used the same signature, sometimes with the erroneous title "Attorney for the Father." (*Id.*, at Exhs. A, B, E) The transcript of the June 20, 1999, hearing lists the appearance on behalf of the mother as:

PAPPAS, CARSLSON [sic] & ELWELL

(By Barry D. Elwell, Esquire)

2 Elm Square

Andover, Massachusetts 01810

(*Id.*, Exh. D, at 2) On January 8, 2003, Elwell sent a letter to Andrews's new attorney, which used letterhead bearing the title:

PAPPAS, CARLSON, ELWELL & COLICCHIO

ATTORNEYS AT LAW

(*Id.*, Exh. F) Underneath the title, the letterhead listed the names of each attorney down the left side, one telephone number and one fax number in the center, and the states of Massachusetts, New Hampshire, and Oregon down the right side. (*Id.*)

The movants have each submitted affidavits stating that they did not intend to enter into a partnership with Elwell. (Def. Memo., Docket No. 38, Exhs. 4–6) They state, in these affidavits, that each contributed toward the common office expenses but maintained separate client funds accounts and operating accounts. (*Id.*) They also state that, for the years they shared office space with Elwell, they each filed separate tax returns as sole proprietors. (*Id.*) The movants have submitted copies of tax returns as sole proprietors from the year 2000 for Pappas and Carlson, and 2001 for Colicchio. (*Id.*, Exhs. 7–9)

Andrews has provided an attorney liability insurance policy for the years 2002–03 that names "Pappas, Carlson, Elwell & Colicchio" as the insured. (Pl. Resp., Docket No. 44, Exh. G) Under a heading titled, "Name of Each Lawyer," the individual lawyers are each named. (*Id.*) According to the plaintiff, the policy only allows partners, shareholders, or employees of the named insured to be listed on the policy. (*Id.*) Paul Pappas is named as the "Sole Agent" on the first page of the policy; pursuant to the policy, this "Sole Agent" represents each of the insureds in their dealings with the insurance company. (*Id.*)

The parties dispute what Andrews believed about the existence of a partnership,

and what steps she took, or failed to take, in reliance upon this belief. The Commonwealth of Massachusetts assigned Elwell to Andrews; she did not select her attorney. (Def. Memo., Docket No. 38, Exh. 2; Andrews Dep., at 96) The Notice of Assignment of Counsel only lists "Barry D. Elwell" as the assigned attorney. (Def. Memo., Docket No. 38, Exh. 2) Andrews submits an affidavit in which she states that, based on her telephone calls to Elwell's office, Elwell's letterhead, and Elwell's signature on court documents, she assumed he was in a partnership. (Pl. Resp., Docket No. 44, Exh. J) In her deposition, Andrews stated repeatedly that she was under the mistaken impression that she could not get another attorney appointed for her. (Andrews Dep., at 97) Andrews also never asked Elwell if a new attorney could be appointed because she "felt that he would probably say no." (*Id.*) Andrews also never asked the attorneys at Elwell's office if a new attorney could be appointed. (*Id.*)

## C. Analysis

The movants seek summary judgment in their favor on the grounds that no partnership existed between them and Elwell and that Andrews cannot establish partnership-by-estoppel. Colicchio seeks summary judgment in his favor on the additional ground that he only began his association with Elwell and the other defendants after the time of Elwell's representation. I address these arguments in turn.

### 1. Partnership–in–Fact

█ Massachusetts law defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Mass. Gen. Laws ch. 108A, § 6. Courts look to several factors to determine whether a partnership exists, including: "whether there is '(1) an agreement by the parties manifesting their in-

tention to associate in a partnership[,] (2) a sharing by the parties of profits and losses, and (3) participation by the parties in the control or management of the enterprise.'" *Kansallis Finance Ltd. v. Fern,* 40 F.3d 476, 478–79 (1st Cir.1994) (quoting *Fenton v. Bryan,* 33 Mass.App.Ct. 688, 691, 604 N.E.2d 56 (1992)). Evidence that putative partners shared profits and losses establishes a prima facie case for a partnership. Mass. Gen. Laws. ch. 108A, § 7. "While a partnership undoubtedly requires an agreement among the partners, that agreement need not be in writing. Rather, intent to carry on business as partners may be inferred from the partners' words and acts." *Kansallis Finance Ltd.,* 40 F.3d at 479. Conflicting evidence about the existence of a partnership must be resolved by a jury. *See Fenton,* 33 Mass. App.Ct. at 691, 604 N.E.2d 56 (citing *Wheelock v. Zevitas,* 229 Mass. 167, 170, 118 N.E. 279 (1918)).

█ The parties disagree about the import of the defendants' letterhead and other representations, noted above. I will first address whether the defendants' letterhead connotes the existence of a partnership, even though that representation is indicative but not determinative of whether a partnership exists in fact. *See Gosselin v. Webb,* 242 F.3d 412, 417–18 (1st Cir.2001). As I will explain in more detail below, my conclusion on this point may have "troublesome" implications for whether the defendants have committed an ethical violation. *See id.* at 415 n. 3.

The movants argue that use of common letterhead does not suggest that the defendants held themselves out as a partnership, relying upon *Brown v. Gerstein,* 17 Mass.App.Ct. 558, 571, 460 N.E.2d 1043 (1984). In that case the attorneys used letterhead that stated "Gerstein and Weiner" without further elaboration. *Id.* at

572, 460 N.E.2d 1043. The movants quote *Brown* as follows:

> Affirming a judgment for Weiner, the court held that "the use of a person's name in a business, even with that person's knowledge, is too slender a thread" to find that a partnership has been asserted. *Id.* at 572, 460 N.E.2d 1043 (citations omitted).

(Def. Memo., Docket No. 38, at 8) The words that actually follow the word "thread" in that decision are: "to warrant a favorable finding on the consent element." *Brown,* 17 Mass.App.Ct. at 572, 460 N.E.2d 1043. The "consent element" of partnership-by-estoppel is distinct from the question concerning whether the defendants held themselves out to the public as a partnership. *See id.* The movants' selective quotation is, therefore, quite misleading. The *Brown* opinion explicitly stated that it addressed only the "consent element"; I infer from the opinion that both the trial court and the appeals court concluded that the "assertion" or "holding out" element was satisfied in that case. *See id.* Therefore, the *Brown* case actually supports the plaintiff's position that listing the names of attorneys together constitutes "holding out" those attorneys as partners.

More recent case law confirms this conclusion. The Massachusetts Appeals Court concluded that the jury should decide whether defendants held themselves out as partners when they had listed their names on shared letterhead, followed by "Professional Association." *Atlas Tack Corp. v. DiMasi,* 37 Mass.App.Ct. 66, 70, 637 N.E.2d 230 (1994) ("[T]he use of the term 'professional association' may well suggest a partnership to the public which is unlikely to distinguish among partnerships, professional corporations, and professional associations. At the very least, the use of the term in the circumstances of this case presents a question of fact as to whether a partnership by estoppel exists."). The Court of Appeals for the First Circuit considered the same language used in this case, "Attorneys at Law," and concluded that the fact finder could find that the defendants held themselves out as partners. *Gosselin,* 242 F.3d at 417 ("[T]he lobby directory [stated]: 'Field, Hurley, Webb, Sullivan Attorneys at Law' with O'Dea's name listed under the individual Appellees' names. Such a listing implies a 'partnership-like arrangement.'" (quoting Mass. Bar Ass'n Comm'n on Prof'l Ethics, Op. 85–2)). The movants cite three decisions of the Massachusetts Superior Court that, they argue, compel a different conclusion. (*See* Def. Memo., Docket No. 38, Exhs. 10–12) Two of these decisions pre-date *Atlas Tack,* and the third is not persuasive in light of *Atlas Tack* and *Gosselin.*

Finally, this court takes guidance from the ethical rules for attorneys in Massachusetts. A 1985 opinion by the Massachusetts Bar Association Commission on Professional Ethics declined to decide whether it was "deceptive" to use the term "Professional Association" or "P.A." after a listing of lawyers who are not partners. Mass. Bar Ass'n Comm'n on Prof'l Ethics, Op. 85–2. The opinion noted, however, that addition of those terms did not clarify confusion created by the use of the name "A, B, C & D," which *by itself* implied the existence of a partnership. *Id.* The Massachusetts Rules of Professional Conduct later clarified the obligations of lawyers:

> Lawyers may state or imply that they practice in a partnership or other organization *only when* that is the fact.

Mass. R. Prof. Conduct 7.5(d) (2004) (emphasis added) (effective Jan. 1, 1998). Comment 2 to this rule states that lawyers have the obligation to include an "effective disclaimer of joint responsibility" if they are not, in fact, partners but list their names together. *Id.* (effective October 1,

1999). Massachusetts ethical rules are consistent with case law requiring attorneys who list their names together to disclaim joint responsibility if they are not in fact partners.

■ I conclude that, under Massachusetts law, attorneys who present themselves to the public by listing their names together do thereby represent to the public that they are a partnership. Massachusetts law requires that attorneys who do choose to list their names together must disclaim any partnership if they are not, in fact, partners. Anything less than an explicit and unambiguous disclaimer of a partnership can suggest to the public the fact that the attorneys are partners. *See Atlas Tack*, 37 Mass.App.Ct. at 70, 637 N.E.2d 230; *Gosselin*, 242 F.3d at 417. The public is then justified in relying on their notion that they are being served by a group of attorneys and not just a sole practitioner. The combined listing of names is also evidence upon which a jury could find that the defendants were, in fact, a partnership. *See id.*

Having concluded that the representations made by the defendants suggested a partnership, if the movants press their assertion that they were not, in fact, partners at the time they were making those representations, then they have admitted that they committed a violation of Rule 7.5(d). This question is not precisely before the court on this motion by some of the defendants for summary judgment. Accordingly, I make no finding here whether the movants violated Rule 7.5(d).

■ The insurance policy presented by the plaintiff provides additional evidence of a partnership. A professional liability insurance policy in which the putative partners insured themselves as partners is "some evidence that a partnership existed." *Van Dyke v. Bixby*, 388 Mass. 663, 667, 448 N.E.2d 353 (1983) (citing *Bachand v. Vidal*, 328 Mass. 97, 102, 101 N.E.2d 884

(1951)). Unlike the policy in *Van Dyke*, however, the insurance policy in this case is not explicit as to whether the business that is being insured is a partnership. *See id.*, 388 Mass. at 356, 446 N.E.2d 1033 (insurance policy named the insured "individually and as co-partners dba Johnson Clinic"). This case also differs from *Van Dyke* and *Bachand* in that in both of those cases it was conceded that a partnership did exist at some point in time. *See Van Dyke*, 388 Mass. at 665, 448 N.E.2d 353; *Bachand*, 328 Mass. at 101–02, 101 N.E.2d 884. In *Van Dyke*, 388 Mass. at 667, 448 N.E.2d 353, the insurance policy was used to support an inference that the partnership extended to another doctor, and in *Bachand*, 328 Mass. at 101–102, 101 N.E.2d 884, the policy supported the inference that a partnership continued past an alleged date of dissolution. Massachusetts courts have not spoken on whether an insurance policy, alone, would be sufficient for a jury to conclude that a partnership existed. The insurance policy in this case also is not unambiguous in stating that the defendants are a partnership. This ambiguity, however, must be resolved by the fact finder. The plaintiff has other evidence in her favor as well, namely, the defendants' representations to the public that they were a partnership.

In these circumstances, I conclude that the movants are not entitled to summary judgment on these grounds.

### 2. Partnership–by–Estoppel

A finding of a partnership-in-fact will obviate the need to consider whether the plaintiff can establish a partnership-by-estoppel. I will, nonetheless, address the parties' contentions regarding the invocation of this equitable doctrine.

■ The party seeking to invoke this doctrine must prove four elements:

(1) that the would-be partner has held himself out as a partner; (2) that such holding out was done by the defendant directly or with his consent; (3) that the plaintiff had knowledge of such holding out; and (4) that the plaintiff relied on the ostensible partnership to his prejudice.

*Atlas Tack*, 37 Mass.App.Ct. at 68–69, 637 N.E.2d 230 (quoting *Brown*, 17 Mass.App. Ct. at 571, 460 N.E.2d 1043). The parties' arguments are primarily devoted to whether the use of letterhead and the insurance policy constituted "holding out" to satisfy the first element. As noted above, I have concluded that the defendants did hold themselves out as partners by the firm's letterhead and insurance policy. I conclude that the plaintiff has produced enough evidence to satisfy the first element.

The movants' argument with respect to the second element, consent of the putative partner, turns upon a finding that the first element was not satisfied, as they appear to have conceded that they consented to the use of letterhead and the common identification on the telephone. (*See* Def. Memo., Docket No. 38, at 7–8) I conclude that the plaintiff has produced enough evidence to satisfy the second element.

The third element, the plaintiff's knowledge, may also be established by the letterhead and the telephone conversation. The plaintiff has provided an affidavit to this effect. (*See* Pl. Resp., Docket No. 44, Exh. J, Andrews Aff.) I conclude that the plaintiff has produced enough evidence to satisfy the third element.

■ Plaintiff encounters difficulty establishing the fourth element, reliance. The movants note that the Commonwealth assigned Elwell to Andrews. The movants also note that Andrews stated in her deposition that throughout the litigation she was under the mistaken impression that she could not obtain new counsel. There-

fore, Andrews did not rely upon the existence of a partnership in selecting Elwell, nor did she rely upon the existence of a partnership keeping Elwell as her attorney. *Cf. Johnson v. Shaines & McEachern, P.A.*, 835 F.Supp. 685, 690 (D.N.H. 1993) ("Johnson also alleges that due to the complex nature of the litigation, Johnson's decision to continue with Shaines as trial counsel was influenced by the disclosure of the affiliation between Shaines and Goldstein, and that throughout the period of representation Johnson relied upon such affiliation and believed that Shaines conferred with Goldstein." (citations omitted)). Plaintiff's only response to this argument is her statement in the affidavit that she "naturally assumed Attorney Elwell's firm was a partnership." (Pl. Resp., Docket No. 44, Exh. J, Andrews Aff.) This assumption, alone, does not establish reliance.

The reliance requirement of partnership-by-estoppel has rarely been litigated. In each of the cases on point it has either been assumed or conceded. *See Brown*, 17 Mass.App.Ct. at 572, 460 N.E.2d 1043 ("In setting aside the verdict against Weiner, the judge concluded that the evidence was insufficient to satisfy the second requirement ....."); *Atlas Tack*, 37 Mass. App.Ct. at 69, 637 N.E.2d 230 ("At issue here are the first two elements ....."); *Gosselin*, 242 F.3d at 415 n. 4 ("Since the focus of the parties and the district court was limited to the 'holding out' elements, we follow suit and confine our review to the evidence presented on O'Dea's and Appellees' words and actions as they relate to those elements of the claim."). The proof of this element by the typical plaintiff would generally be *pro forma:* simply stating that the plaintiff believed he or she was hiring a law firm is enough. *See Atlas Tack*, 37 Mass.App.Ct. at 68, 637 N.E.2d 230 (noting the only evidence on the subject of reliance was that the plaintiff "as-

sumed that he was hiring the law firm of DiMasi, Donabed & Karll when he spoke to Donabed"). Andrews's case thus presents the unusual, perhaps unique, situation where the client has not chosen the law firm and did not believe she could choose another attorney.

The question thus posed in this case is whether Andrews's unique situation would be held against her by Massachusetts's highest court. *See Blinzler v. Marriott International, Inc.,* 81 F.3d 1148, 1151 (1st Cir.1996) (noting that on unanswered questions of state law, the district court must "mak[e] an informed prophecy of what the [state's highest judicial authority] would do in the same situation"). In answering this question, a court may "seek guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law." *Id.* (citations omitted).

I conclude that the plaintiff's helpless situation should not be held against her, where, as here, the defendants would be violating an ethical rule if they were not, in fact, partners. The Commonwealth of Massachusetts has established policies of providing court-appointed counsel to indigent parents faced with termination of their parental rights and of giving those parents the right to effective assistance of counsel. *See Department of Public Welfare v. J.K.B.,* 379 Mass. 1, 3–6, 393 N.E.2d 406 (1979); *In re Stephen,* 401 Mass. 144, 149, 514 N.E.2d 1087 (1987); Mass. Gen. Laws ch. 119, § 29. This court should not subvert that policy by using Andrews's indigency and her use of the court-appointed counsel against her. Courts have found, in some situations, that violation of an affirmative duty to disclose information can relieve the plaintiff of the burden of proving reliance. *See, e.g., Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)

(holding that, in a case involving misrepresentations in violation of Securities and Exchange Commission Rule 10b–5, "[u]nder the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery."). The defendants, by affirmatively misrepresenting that they were in a partnership, had an affirmative duty to clarify that they were not in a partnership, if that was the case. *See* Mass. R. Prof. Conduct 7.5(d), Comment 2. Although the plaintiff has admitted that she did not know that she could change attorneys, no one can know whether her actions would have been different if the defendants had fulfilled their obligation to clarify that they were not partners, nor can we know what actions the Juvenile Court might have taken if it had known that Elwell was not in a partnership. The defendants should not be allowed to benefit from foreclosing these possibilities. Nor should they be allowed to retain the benefits they reaped from misleading the public and the courts. I conclude that in this situation, if the defendants now deny that they were, in fact, in a partnership at the time of Andrews's representation, the plaintiff's proof of reliance is not necessary due to the defendants' violation of the ethical rule by failing to clarify their partnership status.

As I noted above, I do not need to reach the question of partnership-by-estoppel unless the defendants press their argument that no partnership existed notwithstanding the fact that they represented to the public and the courts that they were in a partnership.

Accordingly, I conclude that movants are not entitled to summary judgment on the foregoing grounds.

**3. Colicchio's Liability**

■ The defendant argues that Colicchio joined the office after Elwell commit-

ted the allegedly negligent acts, so he cannot be held liable as a partner even if a partnership is found. Colicchio is listed on the letterhead and the insurance policy, so the jury may find that he, in fact, joined the partnership. In that situation, "[i]ncoming partners are generally liable only to the extent of partnership assets." *Williams v. Ely*, 423 Mass. 467, 480, 668 N.E.2d 799 (1996) (citing Mass. Gen. Laws ch. 108A, § 17). On this record, however, I cannot conclude that his liability is limited in this way. Elwell apparently only formally moved to withdraw as Andrews's attorney before the Juvenile Court on February 6, 2003. (*See* Pl. Resp., Docket No. 44, Exh. E) Colicchio's affidavit regarding when he began sharing office space with Elwell is imprecise: it simply states that he moved into the office "some time in 2002." (*See* Def. Memo., Docket No. 38, Exh. 6, Colicchio Aff., at ¶ 15) Colicchio therefore cannot receive summary judgment in his favor at this time.

In these circumstances, I will deny the motion for summary judgment of Pappas, Carlson, and Colicchio.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Motion for Summary Judgment of Paul W. Pappas, John F. Carlson, and Neil Colicchio (Docket No. 37) is DENIED.